IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

WALTER I. DROMGOOLE                                                                    PLAINTIFF

vs.                                         CIVIL NO. 04-3081

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                                           DEFENDANT

**MEMORANDUM OPINION**

Walter Dromgoole (hereinafter "plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits ("DIB"), and supplemental security income benefits ("SSI"), under Titles II and XVI of the Act.

**Background:**

The applications for DIB and SSI now before this court were filed on January 24, 2002, and January 14, 2002, respectively, alleging an onset date of October 22, 2001, due to dyslexia, illiteracy, attention deficit disorder, depression, chronic headaches, a constant sore throat, flat feet, severe calluses, a hernia, pain in his hands, bladder problems, and breathing difficulties. (Tr. 73-75, 274-276). An administrative hearing was held on December 11, 2003. (Tr. 285-317). Plaintiff was present and represented by counsel.

At the time of the administrative hearing on December 11, 2003, plaintiff was forty years old and possessed a high school education. (Tr. 12). The record reveals that he had past relevant work experience ("PRW"), in food preparation, sandblasting, and general labor. (Tr. 12).

On June 27, 2004, the Administrative Law Judge ("ALJ"), found that plaintiff suffered from post traumatic stress disorder, mild mental retardation, and organic problem, caused or exacerbated by his alcoholism. (Tr. 20). However, he determined that these impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 20). After discrediting plaintiff's subjective allegations, the ALJ concluded that he maintained the residual functional capacity ("RFC"), to perform work at all exertional levels, but with serious limitations in his ability to maintain personal appearance; follow work rules; relate to co-workers; deal with the public; use judgment; interact with supervisors; deal with work stresses; understand, remember, and carry out simple instructions; behave in an emotionally stable manner; and, relate predictably in social situations. (Tr. 20-21). Further, he determined that plaintiff had no useful ability to function independently; maintain attention and concentration; understand, remember, or carry out complex and detailed instructions; or, demonstrate reliability. (Tr. 21). With the assistance of a vocational expert ("VE"), he determined that there were no jobs existing in significant numbers that plaintiff could still perform. (Tr. 21). However, absent plaintiff's alcoholism, the ALJ concluded that he could perform all of his past relevant work. (Tr. 21).

On July 13, 2004, the Appeals Council declined to review this decision. (Tr. 6-7). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Although both parties were afforded the opportunity to file timely appeal briefs, plaintiff failed to do so. (Doc. #7, 8). This case is now ready for decision.

AO72A
(Rev. 8/82)

**Evidence Presented**:

On January 26, 2001, plaintiff was treated for burns, when his house caught on fire. (Tr. 244). Then, on October 1, 2001, plaintiff was treated for an upper respiratory infection. (Tr. 160). He reported nasal congestion, head fullness, and a cough that was not relieved via over-the-counter allergy or cold medications. Therefore, following an unremarkable physical exam, plaintiff was prescribed Emycin. (Tr. 160).

On May 13, 2002, plaintiff underwent an intellectual assessment. (Tr. 167-172). Intellectual testing revealed that plaintiff was functioning within the mild range of mental retardation. (Tr. 168). He indicated that he had filed for disability because he was illiterate and had trouble sleeping. Further, plaintiff also reported having received five DWI's, stating that he had just completed an alcohol rehabilitation program three months earlier. Dr. Stephen Harris noted that plaintiff's mood seemed to be somewhat flat and slightly depressed. (Tr. 169). Plaintiff told Dr. Harris that his house had "burned down with him inside," and that he continued to have flashbacks of this experience. Adaptively, Dr. Harris indicated that plaintiff stayed away from others, due to feeling threatened. Accordingly, he diagnosed plaintiff with PTSD, alcohol dependence in early full remission, and mild mental retardation with a global assessment of functioning score of fifty-five. (Tr. 171). Dr. Harris opined that plaintiff's prognosis was guarded, but indicated that plaintiff could care for his personal needs on a daily basis. (Tr. 171).

On May 21, 2002, Dr. Katherine Gale completed a psychiatric review technique form, as well as a mental RFC assessment of plaintiff. (Tr. 191-208). She diagnosed him with mental retardation,

3

anxiety-related disorders, and substance addiction disorders. (Tr. 191, 195, 196, 199). Based on this, Dr. Gale concluded that plaintiff had moderate restrictions of activities of daily living, mild restrictions maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (Tr. 201). She also indicated that plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; complete a normal workday without interruption; and, interact appropriately with the general public. (Tr. 205-206). However, no episodes of decompensation were noted. (Tr. 201). Therefore, Dr. Gale determined that plaintiff could perform work where the interpersonal contact was incidental to the work performed, the complexity of the tasks was learned and performed by rote, the tasks required little judgment, and the supervision required was simple, direct, and concrete. (Tr. 207). This assessment was affirmed by Dr. Brad Williams on October 24, 2002. (Tr. 207).

On December 3, 2002, plaintiff underwent a general physical exam. (Tr. 209-215). He reported being illiterate, having a learning disorder, and having been diagnosed with attention deficit syndrome. (Tr. 209). Plaintiff stated that he had been fired from his previous job, approximately one year prior, due to alcoholism. From a psychiatric standpoint, he indicated that he suffers from depression and insomnia. (Tr. 211). However, the doctor noted no evidence of psychosis. (Tr. 214). His physical examination was normal, revealing no abnormalities. The doctor indicated that he was able to perform all activities. (Tr. 215).

On December 11, 2002, Dr. Ronald Crow, a non-examining, consulting physician, completed a physical RFC assessment. (Tr. 216). After reviewing plaintiff's medical records, he concluded that

4

AO72A
(Rev. 8/82)

anxiety-related disorders, and substance addiction disorders. (Tr. 191, 195, 196, 199). Based on this, Dr. Gale concluded that plaintiff had moderate restrictions of activities of daily living, mild restrictions maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (Tr. 201). She also indicated that plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; complete a normal workday without interruption; and, interact appropriately with the general public. (Tr. 205-206). However, no episodes of decompensation were noted. (Tr. 201). Therefore, Dr. Gale determined that plaintiff could perform work where the interpersonal contact was incidental to the work performed, the complexity of the tasks was learned and performed by rote, the tasks required little judgment, and the supervision required was simple, direct, and concrete. (Tr. 207). This assessment was affirmed by Dr. Brad Williams on October 24, 2002. (Tr. 207).

On December 3, 2002, plaintiff underwent a general physical exam. (Tr. 209-215). He reported being illiterate, having a learning disorder, and having been diagnosed with attention deficit syndrome. (Tr. 209). Plaintiff stated that he had been fired from his previous job, approximately one year prior, due to alcoholism. From a psychiatric standpoint, he indicated that he suffers from depression and insomnia. (Tr. 211). However, the doctor noted no evidence of psychosis. (Tr. 214). His physical examination was normal, revealing no abnormalities. The doctor indicated that he was able to perform all activities. (Tr. 215).

On December 11, 2002, Dr. Ronald Crow, a non-examining, consulting physician, completed a physical RFC assessment. (Tr. 216). After reviewing plaintiff's medical records, he concluded that

4

plaintiff's physical impairments were non-severe. (Tr. 216).

On April 7, 2003, plaintiff was treated for thoracic strain and contusions to his ribs, coccyx, and right hand. (Tr. 232, 233). He indicated that he had fallen at work, while lifting a heavy box. (Tr. 233). X-rays revealed no evidence of a fracture. (Tr. 234-238). His wounds were dressed, and plaintiff was told to rest, "take deep breaths and cough," and apply ice to his thoracic spine and ribs. He was also given a prescription for Lorcet Plus. (Tr. 233).

On October 11, 2003, while incarcerated, plaintiff was transported to the emergency room due to chest wall tenderness, chest pain, a dry cough, and costochondritis. (Tr. 219, 230). A cardiac work-up was negative, although a chest x-ray revealed an acute or active inflammatory process, likely bronchopulmonary or a viral pneumonia of moderate severity. (Tr. 219, 223). Plaintiff was discharged with instructions to take over-the-counter Motrin for the pain. (Tr. 219).

On November 18, 2003, and November 20, 2003, plaintiff was evaluated by Dr. Vann Arthur Smith. (Tr. 246-250). Plaintiff indicated that he was drinking approximately twelve alcoholic beverages per day, to help him sleep. (Tr. 247). His full-scale I. Q. was noted to be below average. (Tr. 248). Further, his clinical history, mental status exam, and neuropsychodiagnostic test data revealed a pattern of abnormal findings consistent with the presence of mild to moderately diffuse, bilateral organic brain dysfunction. (Tr. 249). Dr. Smith concluded that plaintiff's neurocognitive deficits were significant and would interfere with his capacity to carry out routine activities of daily living in a consistent manner, rendering him disabled. (Tr. 249). He indicated that plaintiff's global assessment of functioning score was fifty-five. (Tr. 250).

AO72A
(Rev. 8/82)

In addition, Dr. Smith completed a mental RFC assessment of plaintiff. (Tr. 251-255). He concluded that plaintiff would be seriously limited regarding his ability to remember work-like procedures; understand and remember very short and simple instructions; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; set realistic goals or make plans independently of others; interact appropriately with the general public; maintain socially appropriate behavior; and, adhere to basic standards of neatness and cleanliness. (Tr. 253-254). Dr. Smith also opined that plaintiff would be unable to meet the competitive standards in the areas of carrying out very short and simple instructions; maintaining attention for two hour segments; maintaining regular attendance and punctuality within normal limits; sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruption; performing at a consistent pace; responding appropriately to changes in a routine work setting; dealing with normal work stress; being aware of normal hazards and taking appropriate precautions; understanding, remembering, and carrying out detailed instructions; dealing with the stress of semiskilled and skilled work; traveling in unfamiliar places; and, using public transportation. (Tr. 253-254).

On February 23, 2004, plaintiff underwent a second complete psychological evaluation with Dr. Harris. (Tr. 261-263). Plaintiff indicated that he was trying to stop drinking, but still consumed alcohol to help him sleep. (Tr. 262). He stated that he and his wife were both attending Ozark

6

Counseling Services for alcohol and drug counseling. Once again, intelligence testing revealed plaintiff's intellect to be within the mild range of mental retardation.[1] Dr. Harris noted that plaintiff was suffering from organic problems that may be due to his alcoholism. (Tr. 263). In addition, Dr. Harris diagnosed plaintiff with severe depression and anxiety. It was noted that plaintiff would need the assistance of someone who was not an alcoholic, should he be awarded benefits. (Tr. 263).

Dr. Harris also completed a mental RFC assessment. (Tr. 271-272). He concluded that plaintiff had a fair ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, behave in an emotionally stable manner, and relate predictably in social situations. Plaintiff's ability to understand, remember, and carry out detailed, but not complex job instructions was noted to fall between fair and poor. (Tr. 272). Further, his ability to function independently; maintain attention and concentration; understand, remember, and carry out complex job instructions; and, demonstrate reliability was poor. (Tr. 271-272). However, Dr. Harris noted that plaintiff seemed to use alcohol in a chronic manner, thereby increasing his difficulties. (Tr. 272).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir.

---

[1] Dr. Harris noted that Dr. Smith had used an older form of the intelligence test, which would account for the discrepancies in the scores obtained. (Tr. 262). Apparently, Dr. Smith's testing revealed a lower level of functioning than Dr. Harris' test showed. However, the I. Q. scores obtained by Dr. Smith during both of his evaluations of plaintiff were obtained using the newer version of the test and were consistent with one another. (Tr. 262).

7

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevent him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful

activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed , "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

The ALJ noted, and we agree, that the objective medical evidence does not indicate that

9

plaintiff was suffering from any severe physical impairments. An ALJ may consider an impairment to be non-severe only if a claimant's medical impairments are so slight that it is unlikely he or she would be found to be disabled even if their age, education, and work experience were taken into account. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). "Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking the vocational analysis." *Bowen*, 482 U.S. at 158.

As outlined above, aside from intermittent treatment for minor burns; an upper respiratory infection; thoracic strain and contusions to his ribs, coccyx, and right hand; chest wall tenderness; chest pain; a dry cough; and, costochondritis, the medical evidence is devoid of anything to support plaintiff's contention of a severe physical impairment. (Tr. 160, 219, 230, 232, 233-238, 244). *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability). He has not consistently sought medical treatment of any physical condition. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). In fact, plaintiff's general physical exam was normal, revealing no abnormalities. (Tr. 209-215). *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Accordingly, we find substantial evidence to support the ALJ's determination regarding plaintiff's physical impairments.

The ALJ then examined plaintiff's alleged mental impairments, and found that he suffered

10

from mild mental retardation with some resulting organic problems. (Tr. 18). This was based on the mental evaluations performed by Drs. Smith and Harris. (Tr. 167-172, 246-250, 261-263). Dr. Smith evaluated plaintiff and concluded that he would be seriously limited regarding his ability to remember work-like procedures; understand and remember very short and simple instructions; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; set realistic goals or make plans independently of others; interact appropriately with the general public; maintain socially appropriate behavior; and, adhere to basic standards of neatness and cleanliness. (Tr. 253-254). He also felt that plaintiff would be unable to meet the competitive standards in the areas of carrying out very short and simple instructions; maintaining attention for two hour segments; maintaining regular attendance and punctuality within normal limits; sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruption; performing at a consistent pace; responding appropriately to changes in a routine work setting; dealing with normal work stress; being aware of normal hazards and taking appropriate precautions; understanding, remembering, and carrying out detailed instructions; dealing with the stress of semiskilled and skilled work; traveling in unfamiliar places; and, using public transportation. (Tr. 253-254).

Dr. Harris concluded that plaintiff had a fair ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, behave in an

11

emotionally stable manner, and relate predictably in social situations. Plaintiff's ability to understand, remember, and carry out detailed, but not complex job instructions was noted to fall between fair and poor. (Tr. 272). Further, his ability to function independently; maintain attention and concentration; understand, remember, and carry out complex job instructions; and, demonstrate reliability was said to be poor. (Tr. 271-272). Accordingly, the ALJ properly concluded that plaintiff was, indeed, disabled due to his mental impairments.

However, as the ALJ correctly pointed out, an individual will not be considered to be disabled if alcoholism or drug addiction is a contributing factor material to the determination of disability. *See* 42 U.S.C. § 423(d)(2)(C). The key factor in determining if drug addiction or alcoholism is material is if the individual would not be found disabled if alcohol or drug use were to cease. This depends on what mental or physical limitations would remain if the claimant stopped using drugs or alcohol and whether the remaining limitations would be disabling. *See* 20 C.F.R. §§ 404.1535; *Jackson v. Apfel,* 162 F.3d 533, 537 (8th Cir. 1998); *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000). The plaintiff has the initial burden of showing that alcoholism or drug addiction is not material to the finding of disability. *See Brown v. Apfel*, 192 F.3d 492, 497-98 (5th Cir.1999). However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

In the present case, plaintiff testified that he was abusing alcohol. In 2003, he admitted drinking twelve or more alcohol beverages per night to help him sleep. (Tr. 247). Dr. Harris even noted that plaintiff seemed to use alcohol in a chronic manner, intensifying his difficulties. (Tr. 272).

12

As such, we find that the evidence supports the ALJ's conclusion that alcoholism contributed to his disability.

Having concluded that plaintiff was disabled, the ALJ's next task was to determine plaintiff would still be disabled, if he was no longer abusing alcohol. In so doing, the ALJ correctly noted that the record reflects that plaintiff was sober in May 2002, when Dr. Smith completed his first evaluation. At that time, Dr. Smith reported no organicity, other than mild mental retardation. (Tr. 168). He indicated that plaintiff could be understood, could communicate effectively, and could take care of his personal needs. (Tr. 171). Further, Dr. Smith stated that he observed no limitations in the areas of concentration, persistence, or pace. As previously noted, this was vastly different from the evaluations completed by Drs. Smith and Harris conducted later on, when plaintiff was again reportedly abusing alcohol.[2] In addition, on his supplemental interview outline completed on January 22, 2002, plaintiff reported an ability to care for his personal hygiene, do the laundry, wash dishes, change the sheets, vacuum/sweep, take out the trash, perform home repairs, wash the car, mow the lawn, rake leaves, prepare sandwiches and frozen dinners, watch television, sometimes attend church, listen to the radio, and fish. (Tr. 96-97). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (ability to carry out garbage, carry grocery bags, and drive);

---

[2] We also acknowledge the testimony of plaintiff's fiancee, Shaunette Wheeler, who indicated that plaintiff suffered from mental limitations that caused him to experience difficulty reading and understanding information. (Tr. 313-316). She reported no other limitations.

13

*Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). As such, we believe the ALJ was correct in concluding that plaintiff's alcoholism was a contributing factor material to his disability.

While we are cognizant of the fact that plaintiff was mildly retarded, we note that the record reveals that plaintiff did work some, even after his alleged onset date. Clearly he was able to obtain and perform some work, even with his limited intellectual abilities. *See Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (holding that plaintiff's ability to work, even on a part-time basis, is indicative of an ability to perform substantial gainful activity). Further, in response to interrogatories posed by the ALJ, the vocational expert stated that a person with moderate mental limitations in the areas of understanding, remembering, and carrying out detailed instructions; who could appropriately interact with the general public; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; perform work where the interpersonal contact was merely incidental to the work performed, the complexity of the tasks was learned and performed by rote with few variables with little judgment required, and the supervision required was simple, direct, and concrete, could perform all of plaintiff's past relevant work. (Tr. 148). *See Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992) (holding that vocational expert's response to a hypothetical question provides substantial evidence to support an ALJ's decision, where the hypothetical question sets forth the claimant's impairments with reasonable precision). Therefore, since there is no evidence to indicate

14

that plaintiff's IQ has diminished since he last worked, we agree that his intellectual limitations are not so severe as to render him totally disabled. *See Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) (stating that a person's IQ is presumed to remain stable over time). Accordingly, we find that substantial evidence supports the ALJ's conclusion that plaintiff could return to his past relevant work as a food preparer, sandblaster, and laborer.

## **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this <u>1st</u> day of February 2006.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)